UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

CITY OF PORTLAND,

                Plaintiff,

v.

CHARLES IHEANACHO; CHERYL D. IHEANACHO, *individuals*,

                Defendants.

Case No.: 3:17-cv-0401-AC

OPINION AND ORDER

ACOSTA, Magistrate Judge:

*Introduction*

Plaintiff City of Portland (the "City") brings suit against Defendants Charles Iheanacho and Cheryl D. Iheanacho (collectively, "the Iheanachos") for breach of contract, alleging the Iheanachos failed to report required compliance information in conjunction with a government-administered affordable housing program loan. Presently before the court is the Iheanachos' motion to strike the

City's answer to their counterclaims or, in the alternative, for leave to amend their answer. The Iheanachos move to strike the answer and affirmative defenses to Defendants' counterclaims contained therein as untimely under Federal Rule of Civil Procedure ("Rule") 12(f) and also, specifically, to strike the City's statute of limitations affirmative defense based on judicial estoppel. Alternatively, the Iheanachos move for leave to amend their answer to the City's complaint, including affirmative defenses and counterclaims, pursuant to Rule 15(a).

For the reasons set forth below, the court denies the Iheanachos' motion to strike, and grants the Iheanachos' leave to amend their answer.[1]

*Factual Background*

The U.S. Department of Housing and Urban Development ("HUD") administers a national funding program known as the HOME Investment Partnerships Program ("HOME"), which provides funds to assist state and local governments to create affordable housing for low-income households. (ECF No. 1, Ex.1 ("Complaint"), ¶ 3.) The Portland Development Commission ("PDC"), an agency of the City of Portland, provides funding to developers of affordable housing under terms that are significantly more favorable than those from traditional lending sources and for which the developer may not otherwise qualify. (Compl. ¶ 2.) In exchange, the developer accepts certain responsibilities, including renting designated units only to qualified low-income tenants, and providing information, reports, and access to demonstrate compliance with program requirements. (*Id.*)

From 1995 through 2001, the Iheanachos applied to the HOME program but the PDC repeatedly denied their applications. (ECF No. 6, ("Answer"), ¶¶ 45, 47.) However, from 2002

---

[1] The parties have consented to jurisdiction by magistrate judge pursuant to 28 U.S.C. § 631(c)(1).

through 2006, the Iheanachos and the PDC entered into a series of agreements to finance the rehabilitation and construction of two multi-family housing developments: Buka's Place and Roselyn Villa. (Compl. ¶ 4; Answer ¶ 5.) Under the agreements, the Iheanachos received funding from the HOME program and other local and state programs and, in return, promised to provide and maintain a minimum number of affordable units and meet all program compliance reporting requirements. (Compl. ¶ 4.)

According to the Iheanachos, the PDC "took over all aspects of the project with very little or no input from Defendants," "disbursed funds at their own discretion," and retained authority to issue change orders. (Answer ¶¶ 52, 53.) Certain portions of the project failed city inspections, which necessitated change orders. (*Id.* ¶ 55.) The project exceeded its budget, the Iheanachos soon ran out of money, and subcontractors placed liens on the project. (*Id.* ¶¶ 55–57.) As a result, the Iheanachos "were forced to take a home equity loan against their residence to rescue the project." (*Id.* ¶ 58.)

Unlike Buka's Place, the Roselyn Villa project progressed on budget and the Iheanachos did not incur losses of the same magnitude as from the Buka's Place development. (Answer ¶ 64.)

In 2010, the Portland Housing Bureau ("PHB") assumed PDC's rights and interests in both Buka's Place and Roselyn Villa. (Compl. ¶ 9; Answer ¶¶ 68, 69.) Subsequently, according to the Iheanachos, the PHB changed the compliance reporting requirements and mandated that the reports be submitted electronically, through an online reporting system. (Answer ¶ 70.) The Iheanachos were "unable to comply with this mandate" but assert that they "remained current with their HUD mandating reporting through the State of Oregon." (*Id.* ¶ 70.)

*Procedural Background*

The City filed suit in Multnomah County Circuit Court on November 10, 2016, asserting claims for breach of contract, alleging the Iheanachos "utterly failed in their obligations under the agreements" and failed to meet the required compliance obligations. (Compl. ¶ 11.) On January 12, 2017, the Iheanachos moved to dismiss under Oregon Rule of Civil Procedure ("ORCP") 21. (ECF No. 32-1, Ex. A, ("ORCP 21 Motion").) Oral argument on the ORCP 21 Motion was held on February 21, 2017. (ECF No. 37, Ex. A, ("OA Transcript").) On March 4, 2017, the circuit court denied the Iheanachos' motion. (ECF No. 32-1, Ex. C.)

On March 13, 2017, the Iheanachos timely removed the case to federal court, (Notice of Removal, ECF No. 1), and filed their answer, asserting counterclaims for breach of contract, breach of good faith and fair dealing, and civil rights violations. (ECF No. 6.) Simultaneously, the City moved to remand the suit to state court. (ECF No. 4.) On July 6, 2017, this court entered an order "staying all current discovery and pretrial deadlines until after the court has made a ruling on plaintiff pending motion to remand." (ECF No. 12.) Subsequently, however, both parties consented to jurisdiction in federal court and, on August 23, 2017, the court granted the City's withdrawal of its motion to remand. (ECF No. 14, 15, 18, 22.)

On August 23, 2017, the court entered a scheduling order stating, "No later than 11/20/2017, parties are to amend all pleadings and complete joinder of all parties and claims." (ECF No. 23 ("Scheduling Order").) The City answered the Iheanachos' counterclaims on November 20, 2017, asserting several affirmative defenses, including one based on the applicable statute of limitations, alleging the Iheanachos' claims were time barred. (ECF No. 28, ("City's Answer").)

The Iheanachos filed the present motion on December 11, 2017, seeking to strike the City's

Answer in its entirety on timeliness grounds; to strike its statute of limitations defense on the ground of judicial estoppel; and, alternatively, for leave to amend their complaint. (ECF No. 32, ("Motion").)

*Legal Standards*

I.  Rule 12(f)

Under Rule 12(f), a court may, on its own or on a motion, "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). The purpose of a Rule 12(f) motion is to avoid the costs that arise from litigating spurious issues by dispensing with those issues prior to trial. *Fantasy, Inc. v. Fogerty*, 984 F.2d. 1524, 1527 (9th Cir. 1993). Motions to strike are generally viewed with disfavor and are not frequently granted. *Bassiri v. Xerox Corp.*, 292 F. Supp. 2d 1212, 1220 (C.D. Cal. 2003), *rev'd on other grounds*, *Bassiri v. Xerox Corp.*, 463 F.3d 927 (9th Cir. 2006); *Freeman v. ABC Legal Services, Inc.*, 877 F. Supp. 2d. 919, 923 (N.D. Cal. 2012). There is a judicial preference for deciding matters on their merits when possible. *Patapoff v. Vollstedt's, Inc.*, 267 F.2d 863, 865 (9th Cir. 1959).

Courts must view the challenged pleading in the light most favorable to the pleader. *Id.* Generally, "motions to strike should be denied unless it can be shown that no evidence in support of the allegation would be admissible, or those issues could have no possible bearing on the issues in the litigation." *Gay–Straight Alliance Network v. Visalia Unified School Dist.*, 262 F. Supp. 2d 1088, 1099 (E.D. Cal. 2001). However, a motion to strike "may be proper if it will make the trial less complicated or if allegations being challenged are so unrelated to plaintiff's claims as to be unworthy of any consideration as a defense and that their presence in the pleading will be prejudicial to the moving party." *Thornton v. Solutionone Cleaning Concepts, Inc.*, No. CIV F 06–1455 AWI

SMS, 2007 WL 210586, at *1 (E.D. Cal. Jan. 26, 2007) (citing *Fantasy, Inc. v. Fogerty*, 984 F.2d. 1524, 1527–28 (9th Cir. 1993)). The decision to grant or deny a motion to strike is vested within the discretion of the district court. *Fantasy, Inc.*, 984 F.2d. at 1528.

II. Rule 15(a)

Under Rule 15(a), leave to amend should be "freely given when justice so requires." The trial court has discretion when deciding whether to grant leave. *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981). The court should grant leave to amend with "liberality," so that matters are decided based on merit, rather than "bare pleadings." *Id.* The court may deny the leave to amend if the amendment demonstrates: 1) undue delay; 2) bad faith; 3) futility; or 4) prejudice. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006).

*Discussion*

The Iheanachos move to strike the City's Answer, in its entirety, as untimely under Rule 12(f). The Iheanachos also move to strike specifically the City's statute of limitations affirmative defense on the ground of judicial estoppel. In the alternative, the Iheanachos move for leave to amend their Answer to the City's Complaint to allow them to eliminate any claims or allegations that are time barred.

I. Motion to Strike the City's Answer

    A. *Untimeliness and Prejudice*

Under Rule 12(a)(1)(B), a party must file an answer within 21 days after being served with a pleading asserting a counterclaim. The Iheanachos contend that once their Answer and counterclaims were filed on March 17, 2017, the City was required to file its answer to that pleading

within twenty-one days, or by April 7, 2017. The City did not file its answer until eight months later, on November 20, 2017. The Iheanachos note that even if the court utilizes the date the motion to remand was withdrawn, August 23, 2017, as the date trigger for the Rule 12 deadline, the City was still 89 days late in filing its responsive pleading. The Iheanachos argue the City's late filing is burdensome and prejudicial because the Iheanachos developed a litigation strategy based on the City's failure to file a timely answer and now must re-review more than 3,400 documents supplied by the City for an entirely new set of defenses, which they contend will run up costs and attorney fees.

The City responds that it followed the court's Scheduling Order in filing its Answer. The City represents it interpreted the Scheduling Order's November 20, 2017 deadline as the close of pleadings deadline, that is, that the City had until November 20, 2017 to file its Answer, and it filed its Answer, accordingly. The City states that if it "interpreted the scheduling order incorrectly, it was inadvertent error." (Pl.'s Resp. Br., ECF No. 34, at 5.) The City also argues that the Iheanachos "suffer no actual prejudice from any delay." (*Id.*) It notes that, on October 25, 2017, defense counsel represented she was unaware of having received discovery two weeks earlier and, during a December Rule 16 hearing, admitted to not having fully reviewed her own discovery. (*See* Pl.'s Resp. Br. at 6; Declaration of Simon Whang., ECF No. 35, Ex. A., 1–2.) Hence, the Iheanachos' counsel would not need to re-review discovery in its entirety; rather, the City's affirmative defenses now would help focus counsel's attention on key areas. The City also argues the Iheanachos had reason to anticipate the asserted affirmative defenses because they were taken from a fixed list of common affirmative defenses and, specifically, the statute of limitations defense was previously raised and litigated in the ORCP 21 Motion. Finally, the Iheanachos still are able to conduct further discovery as to the

defenses because the court has extended the discovery completion deadline to June 8, 2018. (*See* ECF No. 31.)

An answer's untimeliness is not, by itself, a sufficient reason for granting a motion to strike. *See, e.g., Estate of Hirata v. Ida*, 2011 WL 3290409, at *3 (D. Haw. June 14, 2011) (declining to strike an answer that was more than nine months late, despite defendants' failure to offer an explanation, because defendants "demonstrated an intent to defend the case on the merits"); *Field Turf Builders, LLC v. Fieldturf USA, Inc.*, No. 09-671-HA, 2010 WL 817628 (D. Or. Mar. 4, 2010) (concluding "the interests of justice compel denying the motion for default even though plaintiffs failed to respond to counterclaims in a timely manner"); *AT&T Corp. v. Dataway Inc.*, 577 F. Supp. 2d 1099, 1103 (N.D. Cal. 2008) (declining to strike an answer that was filed five months after the filing deadline when counsel admitted his oversight and had been "vigorously defending and prosecuting" the action).

For example, in *Beal v. U.S. Dept. of Agriculture*, 2012 WL 3113181, at *2 (E.D. Wash. July 31, 2012), the court denied the government's motion to strike an answer that was filed 14 months late. Beal defended there was good cause for the delay "because the parties were attempting to resolve this lawsuit" and that Beal's counsel was unfamiliar with that district's requirements and therefore was following state court filing rules. *Id.* The court declined to strike on untimeliness grounds because of the "judicial preference for deciding matters on their merits when possible." *Id.*

Inadvertence in filing an untimely answer may qualify as excusable neglect. In *McCabe v. Arave*, 827 F.2d 634, 639–40 (9th Cir. 1987), the Ninth Circuit affirmed a district court's denial of the plaintiffs' request to strike defendants' defenses in an answer that plaintiffs received only on the day of trial. The court accepted the defense attorney's statement that the answer was untimely due

simply to "inadvertence." *Id.* at 640. The Ninth Circuit reasoned that because the district judge was in a better position to assess counsel's credibility and the defendants had participated in discovery, it was likely that an inadvertent, good faith failure to file an answer occurred. *Id.* Therefore, the court held the district judge did not abuse his discretion in denying the motion to strike. *Id.*; *Cf. Wanke Cascade Distribution, Ltd., v. Forbo Flooring, Inc.*, No. 3:13-cv-00768-AC, 2015 WL 1757151, at *5 (Apr. 17, 2015) (granting motion to enlarge time, concluding that calendaring errors and increased demands during the holidays qualified as excusable neglect and did not unduly prejudice plaintiff).

Pursuant to Rule 12(a)(1)(B), the City was required to file its Answer to the Iheanacho's counterclaims, at the latest, within 21 days of its withdrawal of the motion for remand. Instead, the City filed its answer nearly three months later. Thus, the City's Answer to the Iheanachos' counterclaims was untimely. However, because the City has been actively prosecuting this action since, little prejudice would ensue, and in light of a strong judicial preference for resolving cases on their merits, this untimeliness does not warrant striking the City's pleading.

There is less prejudice here than existed in *Beal*. Unlike the 14-month delay in *Beal*, the City's Answer was only three months late. And, here, the City's counsel represented he was, at the least, attempting to abide by the court's Scheduling Order. The court accepts the City's statement that its misinterpretation of the Scheduling Order was due to "inadvertence." The City's inadvertence here, like that in *McCabe*, qualifies as excusable neglect and does not unduly prejudice the Iheanachos.

Moreover, the Iheanachos will not be unduly prejudiced by allowing the City to assert their answer and affirmative defenses because the Iheanachos still are able to conduct further discovery

as to the defenses until the extended discovery completion deadline, June 8, 2018. Although the Iheanachos argue that they will have to recreate their entire litigation strategy based on the untimely Answer and review again over 3,400 pages of discovery, it is hardly uncommon and often necessary for counsel to revisit discovery materials throughout litigation, particularly following a responsive pleading. That this review comes later is not ideal, but the delay here does not rise to the level of prejudice to warrant striking the entire responsive pleading. As such, there is little justification for the drastic remedy of striking the City's answer, and the court declines to exercise its discretion to do so.

To address the parties' respective concerns about prejudice as a result of these late amendments, the court will require each party to provide information about their proposed new affirmative defenses. Accordingly, both the City and the Iheanachos are each ordered to provide interrogatory answers to the other party providing the factual basis for their respective affirmative defenses. The City is required to provide answers regarding the following affirmative defenses: 2, 3, 5, 7, 12, 13, and 20. The Iheanachos must provide answers regarding the following affirmative defenses: 2, 3, 4, 5, 8, 9, 11, 12, 14, 15, and 16. These court-ordered interrogatory answers shall not count toward each side's 25-interrogatory limit.

B. *Judicial Estoppel*

The Iheanachos also move to strike the City's statute of limitations affirmative defense, specifically, arguing that because the City took a position in state court contrary to its current position, the doctrine of judicial estoppel should bar the defense here.

The purpose of the doctrine of judicial estoppel is to "protect the integrity of the judicial process." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). When determining whether to apply

judicial estoppel, a court looks to several factors. The court examines whether a party's current position is "clearly inconsistent" with its earlier position. *Id.* at 750. Also considered is whether the party was successful in their argument in the first proceedings, and whether their inconsistent position in a later proceeding would create "the perception that either the first or the second court was mislead." *Id.* Relevant, too, is whether an unfair advantage or unfair detriment would be imposed on the opposing party if the inconsistent party was not estopped. *Id.* at 751; *see also Davis v. Wakelee*, 156 U.S. 680, 689 (1895) (stating the "general proposition that, where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position"). These factors are not a comprehensive list. *New Hampshire*, 532 U.S. at 751. Rather, judicial estoppel, applied at the discretion of the trial court, should take into account "specific factual contexts." *Id.*

Applying the requisite judicial estoppel factors, the court first considers whether the City's current position is clearly inconsistent with its earlier position in state court. The position at issue here centers on how ORS 12.250 applies to the applicable statute of limitations in cases to which a public body is a party.

ORS 12.250 provides: "Unless otherwise made applicable thereto, the [statutes of] limitation prescribed in this chapter shall not apply to actions brought in the name of the state, or any county, or other public corporation therein, or for its benefit." The Oregon Supreme Court has discussed the development of ORS 12.250, explaining that, historically, the Oregon "legislature expressly consented to the application of statutes of limitations against the state, any county, or other public corporation." *Shasta View Irrigation Dist. v. Amoco Chemicals Corp.*, 329 Or. 151, 160 (1999). However, "in 1903, the legislature revived and codified a version of the common-law rule that

general statutes of limitations do not apply to those entities, unless the statute expressly or by necessary implication provides otherwise." *Id.* (emphasis added) (citing *State Land Board v. Lee*, 84 Or. 431, 436 (1917)).

The text of ORS 12.250 and the cases interpreting the law make clear that the rule functions to exempt the enumerated public entities from the restrictions posed by otherwise-applicable statutes of limitations. *See, e.g., Chizek v. Port of Newport*, 252 Or. 570, 578 (1969) (applying ORS 12.250 to hold that a "Port, as a public body, is not barred by the statute of limitation"); *City of Pendleton v. Holman*, 177 Or. 532, 538 (1945) (explaining that a municipal corporation "could, of course, invoke the statute [ORS 12.250] against a natural person or private corporation," and therefore holding statute of limitations did not bar City's claims). In other words, a public entity can invoke ORS 12.250 to block a statute of limitations that would apply to bar its claim were it a non-public entity. Invoking ORS 12.250 does not mean the statute of limitations does not apply to the case as a whole; it merely means the time bar does not apply to claims "brought" by the public entity.

Here, the relevant statute of limitations is ORS 12.080(1), which requires that contract actions must be commenced within six-years. Because this is a claim for breach of contract, the six-year statute of limitations under ORS 12.080(1) ordinarily would apply. However, because this statute of limitations is within ORS Chapter 12, then ORS 12.250 is triggered, and the statute of limitations does not apply to the exempt City of Portland. However, this does not prevent the City from invoking ORS 12.080(1) against the Iheanachos, it only lifts the restriction as to the City for defending against the breach of contract claim.

In its ORCP 21 Response, the City argued that, under ORS 12.250, the statute of limitations under ORS 12.080 "d[id] not apply to . . . actions by the City" because it was a municipal

corporation, (ECF No. 32-1, Ex. B, at 6), and the state court agreed. Now, in its Answer to the Complaint, the City asserts an affirmative defense that the Iheanachos' breach of contract counterclaim is barred by ORS 12.080(1)'s six-year statute of limitations. The Iheanachos now argue the City is estopped from asserting its ORS 12.080 defense because that position is incompatible with that previously argued before the state court. The Iheanachos interpret that the City's 12.250 argument in the ORCP 21 Response was that the statute of limitations was inapplicable to the case as a whole, which constituted a "knowing waiver" of the statute of limitations as applied to the entire case, and that "the inconsistent positions Plaintiff takes [make] moot Defendant's pleadings and allow Plaintiff to gain an unfair advantage over Defendant." (Motion at 7.)

The City's positions with respect to ORS 12.250 and 12.080 are not inconsistent. In state court, the City asserted that under the language of ORS 12.250, municipal corporations are exempt from the six-year statute of limitations of ORS 12.080. That argument was not a waiver of ORS 12.080 as applied to the case. The City now maintains that ORS 12.250 still exempts municipal corporations from ORS 12.080, but also now asserts ORS 12.080 as an affirmative defense against the Iheanachos. The City's argument in state court that municipal corporations are exempt from the statute of limitations is, therefore, not only consistent with its respective position before this court, but also consistent with the Oregon Supreme Court's interpretation of how the two statutes interact.

As to the second *New Hampshire* factor, the City succeeded in asserting its position in state court. As explained above, that position is consistent with the City's position here; therefore, neither court is mislead. Lastly, no unfair advantage or detriment is implicated here because, again, there

is no inconsistency here. Accordingly, judicial estoppel does not apply, and the City's affirmative defense is not stricken.

II.   Motion to Amend the Iheanachos' Answer

The Iheanachos also move for leave to file an amended answer, pursuant to Rule 15(a). They argue amendment is warranted to comply with the court's anticipated ruling on the statute of limitations issue, to "save time and money in the pursuit of claims that will surely be struck as untimely." (Defs.' Reply Br., ECF No. 36, at 6.) Thus, amendment would "streamline this litigation." (Motion at 9.)

Though the Iheanachos' Motion proposes to amend the answer only to "amend [their] pleadings to accurately state [] claims and defenses which fall squarely in the court's ruling" as to ORS 12.250, the changes submitted in their proposed amended answer include new factual allegations as well. Most significantly, the Iheanachos' seek to add factual allegations to support further their latches affirmative defense and their three counterclaims: breach of contract, breach of good faith and fair dealing, and violation of civil rights. Specifically, the Iheanachos seek to add facts alleging that the City wrongfully and without notice failed to abate real property taxes for both Buka's Place and Roselyn Villa; failed to provide the Iheanachos requisite training to ensure compliance with all HUD requirements; prevented them from calculating funding gap amounts and developer's fees; failed to advise them that rents could be raised; "threaten[ed them] with foreclosure because [they] were unable to use the automated computer reporting system"; through its agent director, "t[ook] other actions designed to financially stress [the Iheanachos] and/or force [them] into foreclosure" in order to "induce [the Iheanachos] to breach . . . the underlying contracts"; denied the Iheanachos access to the HOME program for six years before ultimately accepting their

applications; and failed to extend an additional, zero percent loan to the Iheanachos when the original funding for Buka's Place was depleted; and "engage[d] in a pattern of pattens of threats and intimidation against Charles Iheanacho." (ECF No. 42, Defs.' Proposed First Amended Answer ¶¶ 68, 77, 85.)

### A. Prejudice

When determining whether or not to grant leave to amend, prejudice against the non-moving party is the most important factor. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). A motion for a leave to amend should not be granted if it causes substantial prejudice to the opposing party. *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990). Amendment causes substantial prejudice when it creates additional discovery or cost, either by "greatly chang[ing]" the nature of the litigation or causing an "inordinate delay." *Id.*

The Iheanachos are correct that omitting time-barred allegations poses little, if any, risk of prejudice to the City. However, adding the newly asserted factual allegations may pose such a risk.

First, the deadline for discovery in this case has not passed. Therefore, the City is still able to conduct discovery on the new allegations until the court ordered discovery deadline on June 8, 2018. As a result, the added material would not significantly add to the cost of discovery. Second, the nature of the litigation was not significantly altered since the Iheanachos do not seek to add any new claims, only new factual allegations. The proposed factual allegations the Iheanachos seek to add all arise from the same set of facts and do not alter the nature of the claims already asserted. Lastly, the present Motion comes relatively early in the litigation proceedings. And, any delay caused by this amendment is significantly shorter than that caused by the City's untimely filing of its answer. Therefore, even the newly proposed factual allegations do not substantially prejudice

the City

### B. Futility

The test for futility is the standard used for a Rule 12(b)(6) motion to dismiss. *Fulton v. Advantage Sales & Marketing, LLC*, No. 3:11-cv-01050-MO, 2012 WL 5182805 at *2 (D. Or. Oct. 18, 2012). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff is required to show that she or he has a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plausible claim comprises "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Here, again, the Iheanachos' proposed amendments do not assert any new claims. They merely provide additional factual detail to existing claims. The new supporting factual allegations directly relate to the substance of the claims and appear to augment the viability of those claims. Thus, the addition of the new factual allegations is not futile.

### C. Undue Delay

Undue delay arises if a party seeks to add a claim known to the party prior to initiating the action. *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir. 1990). Extensive and unjustified delay between learning new information and seeking leave to amend also creates undue delay. *AmerisourceBergen Corp.*, 465 F.3d at 952–53.

Here, it is unclear whether the Iheanachos had reason to know of and therefore should have included the proposed factual allegations in their initial Answer. Regardless, as mentioned *supra*, because these amendments will not significantly add to discovery needs and because they come at an early stage in the proceedings, prior knowledge of the proposed factual allegations here is not enough to deny the Iheanachos leave to amend.

Because there is no significant prejudice, futility, and undue delay as a result of the amendment, the abovementioned factors do not outweigh the strong presumption allowing amendment under Rule 15(a).

*Conclusion*

Based on the foregoing, the Iheanachos' Motion to Strike is DENIED. The Iheanacho's Motion to Amend is GRANTED.

IT IS SO ORDERED.

DATED this 23rd day of March, 2018.

JOHN V. ACOSTA
United States Magistrate Judge